# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-00201-MR

| | |
|---|---|
| JENNIFER ANN JASMAINE )<br>f/k/a Duane Leroy Fox, )<br>)<br>         Plaintiff, )<br>)<br>vs. )<br>)<br>FNU LIZINBEE, et al., )<br>)<br>         Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 34].

## I.   PROCEDURAL BACKGROUND

Pro se Plaintiff Jennifer Ann Jasmaine ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. Plaintiff filed this action on April 20, 2018. [Doc. 1]. Plaintiff filed a verified Amended Complaint on July 26, 2018 pursuant to 42 U.S.C. § 1983, asserting violation of her First Amendment rights, and the Religious Land Use and Institutionalized Persons

Act ("RLUIPA"), 42 US.C. § 2000cc-1, against Defendant FNU Lesinby,[1] identified as Chaplain at Lanesboro Correctional Institution ("Lanesboro"),[2] and Defendant FNU Brown, identified as Regional Chaplain. [Doc. 15].

Plaintiff alleged that, on April 10, 2018, she sent Defendants Linsenby and Brown a DC-572 Inmate Request for Religious Assistance form regarding Plaintiff's practice of Witchcraft[3] at Lanesboro and that Plaintiff received no response. [Id. at 4]. Plaintiff alleged that "[t]here is no way to practice Witchcraft the way the policy is written." [Id.]. Plaintiff seeks injunctive and declaratory relief and nominal damages. [Id. at 46-47]. Plaintiff's Amended Complaint survived initial review and she proceeded on her First Amendment and RLUIPA claims.[4] [Doc. 16].

---

[1] Defendant Lesinby's true full name is Roy Linsenby and Defendant Brown's true full name is Betty Brown. The Court will direct the Clerk to update the docket in this matter accordingly.

[2] Lanesboro has since been converted to a women's prison and is now called Anson Correctional Institution.

[3] Although Plaintiff refers to the religion that is the subject of her Complaint as "Witchcraft," she also refers to "Wiccan services" in her Amended Complaint. [See Doc. 15 at 2, 3]. Plaintiff alleges that, "[i]n 1974, seventy-three (73) witches came together to form the Council of American Witches. They produced a document consisting of thirteen (13) principals explaining the basic fundamental concepts of a religious form of Witchcraft called Wicca, (Which is one branch of Witchcraft, not the only one. There are numerous branches of Witchcraft)." [Id. at 34].

[4] Plaintiff also purported to assert a Fourteenth Amendment equal protection claim, [Doc. 15 at 8], which was not addressed on initial review, [see Doc. 16]. In support of this claim, Plaintiff alleged that "[D]efendants made special rules and gave special benefits to members of other religions" and that Defendants discriminated "against Witchcraft based on suspect classifications because Witchcraft is [an] insular minority." [Doc. 15 at 8]. To

2

Case 3:18-cv-00201-MR   Document 42   Filed 09/13/21   Page 2 of 18

Plaintiff conducted no discovery in this matter, [see Doc. 35 at 2], and Defendants moved for summary judgment, [Doc. 34]. In support of their motion, Defendants submitted a memorandum; an Affidavit of Defendant Betty Brown; the North Carolina Department of Public Safety (NCDPS) Religious Services, Wicca, and Food and Nutrition Management Policies; and Plaintiff's DC-572 form. [Docs. 35, 36-1 through 36-5].

The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 37]. The Plaintiff was specifically advised that she "may not rely upon mere allegations or denials of allegations in [her] pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, she must support her assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

establish an equal protection violation, Plaintiff first must demonstrate that she has been treated differently from others with whom she is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). Plaintiff failed to meet this burden (and forecasts no evidence in support of this claim now). The Court, therefore, dismisses her Fourteenth Amendment claim.

3

Case 3:18-cv-00201-MR   Document 42   Filed 09/13/21   Page 3 of 18

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. at 3 (citing Fed. R. Civ. P. 56(c)(1)(a)]. The Court further advised that, "[i]f Plaintiff has any evidence to offer to show that there is a genuine issue for trial," "[she] must now present it to this Court in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations." [Id. at 2 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff did not respond to Defendants' summary judgment motion. Plaintiff's Amended Complaint, however, was submitted under penalty of perjury and the allegations therein made on Plaintiff's personal knowledge, therefore, are to be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding that verified prisoner complaints should be considered as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

4

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in her pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

5

248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

In the Amended Complaint, Plaintiff alleged that she sent Defendants a DC-572 form requesting assistance with the practice of her religion. On this form, Plaintiff listed "Witchcraft" as the official name of her religion.[5] [Doc. 6 at 2]. Plaintiff alleged that she received no response to her DC-572 form from Defendants. Plaintiff also alleged that "[t]he policy is incorrect on the entire aspect of Wiccan," that "we are not given the proper supplies to

---

[5] In her Amended Complaint, Plaintiff incorporates by reference the DC-572 form she filed with the Court on April 20, 2018 in this case. [Doc. 15 at 4, 45; see Doc. 6]. The DC-572 form filed by Plaintiff is missing its second page. Attached to it, however, is what appears to be Plaintiff's handwritten requests for changes to policy to practice Witchcraft. [See Doc. 6 at 3-9]. Defendants submitted the complete two-page DC-572 form with their summary judgment materials but did not submit the attachment. [See Doc. 36-5].

6

have Wiccan service" and that Defendant Linsenby "wont even put Wiccan service on the schedule." [Doc. 15 at 2 (errors uncorrected)]. Plaintiff further alleges that Witchcraft is the only faith "that is held to having services only eight times a year[,] [y]et the Native Americans have service three times a week, every week." [Id. at 2]. Plaintiff also alleges that "Witchcraft does not get to have their special meal for each sabbats," which are special Days of Observance, and although "Witchcraft is a nature[-]based faith, like Native Americans," "Witchcraft is not allowed to have their service outside like Native Americans do" or use fire as part of their services. [Id. at 2, 7]. Plaintiff seems to allege that Witchcraft requires a vegan diet, which she has been denied. [Id. at 5-6]. Plaintiff, however, later alleges that the needs of Witchcraft can also be met with a vegetarian diet. [Id. at 44; see id. at 37]. Finally, Plaintiff alleges that she is being denied the right to meet with a religious leader and to attend religious services of her faith, despite "Chaple policy" stating that "all reconized religions will get one (1) hour a week." [Id. at 7-8, 10 (errors uncorrected)].

Defendants' relevant forecast of evidence shows the following. The NCDPS Religious Practices Operation Manual that relates to Wicca practice ("Wicca Policy") allows a Wiccan offender to observe eight special Days of Observance called "Sabbats." [Doc. 36-3 at 5-6]. The Wicca Policy notes

7

that there are 13 special days called "Espats" or Full Moon Celebrations that may be observed, but "these celebrations are subject to approval of the facility head and shall in no way interfere with work assignments." [Doc. 36-3 at 6]. The Wicca Policy calls for the availability of certain Corporate Worship items that are to be stored in the Chapel in a locked secured area when not in use. These items include an altar of wood, an altar cloth, three bowls, one Chalice, one wand, two statues or pictures of various gods and goddesses, six scented altar candles, six candle holders, and one pinecone, seashell, rock, or leaf. [Doc. 36-3 at 6]. Inmates are also given salt and water for ceremonial purposes. [Id. at 7]. The Wicca Policy allows inmates to personally possess a Book of Shadows, a sacred cloth, a cauldron (bowl and chalice), a talisman bag, one pack of Tarot cards, one set of runes, a wand, an athame (picture of a ceremonial knife), a religious medallion, and reading materials. [Id. at 36-3]. The Wicca Policy provides that "most rituals/ceremonies will be handled individually using only the religious paraphernalia authorized in this reference manual." [Id. at 1]. The Wicca Policy does not, however, identify any formal diet requirements for Wiccans. [Doc. 36-1 at ¶ 22]. Nonetheless, the NCDPS Food and Nutrition Management Policy requires a non-meat entrée choice for offenders at all

8

Case 3:18-cv-00201-MR   Document 42   Filed 09/13/21   Page 8 of 18

meals. [Id. at ¶ 25; Doc. 36-4 at 23-24]. As such, Plaintiff could choose a vegetarian diet without a religious accommodation. [See Doc. 36-4 at 24].

Defendant Brown was the NCDPS Chaplaincy Services Coordinator at the relevant times. [Doc. 36-1 at ¶ 2: Brown Aff.]. Pursuant to the NCDPS Religious Services Policy, an offender who believes that her religion is not currently recognized or "whose religious request cannot be met within the framework of existing approved religious services must submit a written request for assistance using the DC-572 Request for Religious Assistance: Fact Sheet form." [Doc. 36-2 at 4-5].

Defendant Brown's office received Plaintiff's DC-572 form. [Doc. 36-1 at ¶ 14]. Defendant Brown reviewed the form and asked Chaplain Swindell Edwards to tell Plaintiff that Wiccan is already an accommodated faith group and that witchcraft is a practice which involves the "exercise or invocation of alleged supernatural powers to control people or events" typically involving sorcery or magic. [Doc. 36-1 at ¶¶ 14-15]. Defendant Brown was not otherwise involved in any decision regarding Plaintiff's ability to practice her faith. [Id. at ¶ 16]. Defendant Brown did not communicate with Defendant Linsenby about Plaintiff or the issues raised by Plaintiff in her DC-572 form and Brown does not recall Defendant Linsenby being involved in any way. [Id. at ¶ 17].

This matter is now ripe for disposition.

## IV. DISCUSSION

Defendants argue they are entitled to summary judgment because they did not violate Plaintiff's rights under the RUIPLA or the First Amendment and because they are entitled to qualified and sovereign immunity. [Docs. 34, 35].

### A. RUILPA and First Amendment

RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

"The protections of § 2000cc-1(a) apply whenever a 'substantial burden is imposed in a program or activity that receives Federal financial assistance' or whenever a 'substantial burden affects, or removal of that

substantial burden would affect, commerce with foreign nations, among the several States, or within Indian tribes." Rendleman v. Rouse, 569 F.3d 182, 186 569 (4th Cir. 2009) (quoting 42 U.S.C. § 2000c-1(b)(1), (2)).  It is undisputed that Plaintiff is in a program receiving federal financial assistance, and she bases her RLUIPA claim on this ground.[6] [Doc. 15 at 9].

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens her exercise of her religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).  The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009).  A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [ ] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion

---

[6] While RLUIPA claims are typically mooted by a prisoner's release from custody or transfer to another institution, since they primarily seek injunctive relief, Rendleman, 569 F.3d at 186 (citing Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007)), Plaintiff has been transferred to another institution at which she is likely subject to the same religious practice policies as she was at Lanesboro.  Moreover, Plaintiff's claim for nominal damages is not mooted by her transfer.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages).

on the other hand."  Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest."  Ozmint, 578 F.3d at 250.  "'RLUIPA adopts a . . . strict scrutiny' standard."  Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8).  Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  Cutter, 544 U.S. at 723 (quotation omitted).  "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[ ] into account any institutional need to maintain good order, security, and discipline.'"  Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I.  The Supreme Court has applied the First Amendment to the states through the Fourteenth

12

Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims

13

requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Here, Plaintiff alleges that she sent a DC-572 form to Defendants requesting assistance with the practice of Witchcraft and that Defendants did not respond. She claims that prison policy did not allow her to properly practice her religion. She asks that she be afforded the opportunity to meet Wicca leaders and attend more Wicca services to be held outside and using fire, be allowed a vegetarian diet, be given special meals for Sabbats, and be allowed to possess the "proper supplies" for a Wiccan service.

On this record it appears that Witchcraft is synonymous with Wicca (and Plaintiff presents no evidence to the contrary). As such, the forecast of evidence does not support violations of Plaintiff's RLUIPA or First Amendment rights by Defendants. While the forecast of evidence shows that the Wicca Policy limits Plaintiff's exercise of Witchcraft in some ways, there is no forecast of evidence that the missing elements are compelled by or central to Witchcraft. There is similarly no forecast of evidence that the Wicca Policy substantially pressures Plaintiff to violate her religious beliefs or forces Plaintiff to abandon a precept of her religion while incarcerated. At best, at one point, Plaintiff alleges that Witchcraft requires a vegan diet. Later, however, Plaintiff alleges that the diet requirements of her religion can

also be met through a vegetarian diet. Moreover, the forecast of evidence shows that all prisoners, including Plaintiff, are offered vegetarian options at all meals.

As such, Plaintiff has not made a prima facie showing in support of her RLUIPA claim and has similarly failed to support her First Amendment claim. Without a substantial burden to the exercise of Plaintiff's religion, the Court need not examine whether "the burden in question is the least restrictive means of furthering a compelling government interest," Ozmint, 578 F.3d at 250, or it is "reasonably related to legitimate penological interests, O'Lone, 482 at 349. There is, therefore, no genuine issue for trial on Plaintiffs claims and the Court will grant Defendants' motion for summary judgment.

## B. Qualified Immunity

"Qualified immunity is an affirmative defense that shields public officers performing discretionary duties from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lovelace, 472 F.3d at 196 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly

established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted); see Lovelace, 472 F.3d at 199 (finding that an inmate's RLUIPA rights were clearly established in 2002 for qualified immunity purposes). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendants violated a constitutional or statutory right, Defendants are also entitled qualified immunity on Plaintiff's individual capacity claims. The Court, therefore, grants summary judgment for Defendants on this ground as well.

### C. Sovereign Immunity

To the extent Plaintiff sought to sue Defendants in their official capacities under § 1983, these claims fail. A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally

bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are also entitled to summary judgment on Plaintiff's official capacity First Amendment § 1983 claim.

RLUIPA, on the other hand, "unambiguously conditions federal prison funds on a State's consent to suit," Madison v. Virginia, 474 F.3d 118, 131 (4th Cir. 2006), although it does not unambiguously extend the waiver of sovereign immunity to liability for monetary claims. As such, while "RLUIPA plainly creates a cause of action against the States," it "falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages." Id. at 131, 133. Accordingly, Plaintiff's RLUIPA claim for

nominal damages against Defendants in their official capacities fails and will also be dismissed on this ground.

## V. CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted.

### ORDER

**IT IS, THEREFORE, ORDERED** Defendants' Motion for Summary Judgment [Doc. 34] is **GRANTED**; and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Fourteenth Amendment claim is **DISMISSED**.

The Clerk is respectfully instructed to update the docket in this matter to reflect Defendant FNU Lizinbee's true full name as Roy Linsenby and Defendant FNU Brown's true full name as Betty Brown.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 13, 2021

Martin Reidinger
Chief United States District Judge